FRED WASHINGTON V. TEXAS & FORT SMITH RAILWAY COMPANY.

Decided November 11, 1899.

**Railway Company—Negligence of Shipper in Loading Cars.**

Where a shipper, in loading a car belonging to a connecting line, but which defendant company had placed on its switch track for the convenience of the shipper in so doing, was guilty of negligence causing plaintiff's injuries, the defendant was not liable therefor, since, as the statute authorizes railroad companies to commit the loading of cars to shippers, it can make no difference that the car so to be loaded belongs to a different company.

APPEAL from Bowie. Tried below before Hon. J. M. TALBOT.

*Smelser & Mahaffey,* for appellant.

*Estes & King,* for appellee.

FINLEY, CHIEF JUSTICE.—This is a suit by Fred Washington against the railway company for personal injuries alleged to have been received by appellant resulting from the negligence of the appellee. On the trial of the case the court directed a verdict for defendant, and in obedience to this peremptory instruction a verdict was rendered for defendant and the appropriate judgment entered thereon. The plaintiff appealed.

There is no question of the fact of appellant's injury; no question but that he was damaged, and the manner in which he received his injuries clearly appears from the evidence. The negligence complained of was shown to be that of the employes of the Texas Car and Foundry Company, while engaged in loading an engine upon a car standing upon the track of appellee, and the question involved and presented here is the liability of the railroad for such negligence. The evidence developed this state of facts.

Appellee, Texas & Fort Smith Railway Company, owned and operated a railroad track on Front Street, in the city of Texarkana, by authority granted to it by the city council of said city. This is a switch track, used by it for switching purposes and for running its passenger trains over to its depot in the city. It places cars on the track to be loaded and unloaded by the ice company, the Hicks Company, and the Texas Car and Foundry Company. The cars are placed where wanted and the shipper loads. A number of wholesale houses and manufactories are on this street, and cars are placed adjacent to each of them for loading and unloading freight. The St. Louis Southwestern Railway Company's track connects with the defendant's track, which runs along Front street about half way between its passenger depot and its Trigg Street depot, and the St. Louis Southwestern Railway Company's freight depot is on Front Street on the south side. The Texas Car and Foundry Company's foundry is on the north side of Front street.

Appellee, at the request of the St. Louis Southwestern Railway Com-

pany, with its switch engine, switched one of the said company's flat cars to the front of the Texas Car and Foundry Company's foundry on appellee's track, to be loaded with a locomotive. Appellee got the car from the St. Louis Southwestern Railway Company's transfer track and hauled it in front of the foundry, and had nothing to do with the loading, and was not interested in the freight charged, and received only $2, the regular switching charges for its services, and which was at the request of the St. Louis Southwestern Railway Company charged to and collected from the Texas Car and Foundry Company. The shipment was to be made over the St. Louis Southwestern Railway.

After the car was placed on the track adjacent to the foundry the Texas Car and Foundry Company began loading it. The work of loading the locomotive on the car was improperly done. The car was in good repair, but the negligent loading caused it to turn over, and the locomotive fell over on a beer wagon passing along the street by it on the opposite side from the foundry.

Plaintiff, Fred Washington, testified that Front Street is about thirty or forty feet wide, and is used a great deal by people walking over it, and in vehicles, drays, and wagons. He drove a dray for the Hunter Transfer Company, and was near the loading of the car when it turned over. He was driving west on Front Street on his way to the Cotton Belt depot, which is on Front Street, and in so going along this street had to pass where the car was being loaded. The car and the loading of it occupied all the street except that part of the street which is south of the defendant's track, and there was only room enough on the south side for one wagon to go by at a time. As plaintiff, with his dray, got nearly to the car, a beer wagon coming east met him, and as there was only room for one wagon to pass the car at a time, he reined up his horses and stopped to let the beer wagon pass. The heads of the plaintiff's horses were about three feet from the car. About the time the beer wagon got half way by the car, plaintiff heard something crack and noticed the car and locomotive were turning over. This made a great noise, and the horses plaintiff was driving suddenly wheeled around and broke away and threw the plaintiff off his dray and on the ground, and he got hung or fastened in some part of the dray and was dragged and injured. He further testified that that portion of the street left unobstructed was that portion mainly used by the public as a highway and passage-way. The track itself and the road he intended to use constituted practically all of the street at that place in use. The space between the platform of the foundry and the railroad track was too narrow for vehicles and practically never used.

It is urged that the railway company, in turn for the privilege granted to operate its railway on the street, owed the duty to the public to operate its railway on this street with prudence and care, to the end that persons having occasion to be on said street might not be injured through the exercise of such privilege; that this duty extended to the loading of the car in question, and that this responsibility could not be shifted or

avoided by committing the work to other hands. It is unquestionably true that the railway company owed to the public the duty of operating its cars upon and over this track laid along Front Street with prudence and care, and that it could not avoid this obligation to the public by committing to another the exercise of the right and privilege granted to it. Railway v. Meador, 50 Texas, 77; Railway v. Culberson, 72 Texas, 375; Railway v. Johnson, 50 S. W. Rep., 1044; 5 Thomp. on Corp., sec. 6349; 3 Elliott on Railroads, secs. 1063-1093; 1 Shearm. & Redf. on Neg., 5 ed., sec. 13; Railway v. Hahn, 32 Am. and Eng. Ry. Cas., 24.

But to concede this general principle does not settle the question of the responsibility of the railway company for the negligence of the shipper in loading the car, resulting in injury to a third person passing along the street upon which the track was laid. It is conceded by appellant's counsel that a railway company may lawfully contract with the shipper to load or unload a car, and that the company will not be held answerable for negligence in the loading or unloading of the car, in any controversy between the shipper and the carrier. But it is claimed that the loading and unloading of cars is primarily the duty of the railway, that it is a part of its operation, and in so far as the public is concerned it owes the duty of care, and can not avoid responsibility by committing the work of loading or unloading to the shipper or any other person.

It would seem clear that the railway company possessed the right to load the car at the point where it was shown to have been undertaken. Streets may be used for such unusual purposes whenever it is reasonably necessary. In Taylor v. Dunn, 80 Texas, 652, it is said: "Necessity may and frequently does justify the use of a street or streets for the purpose of transporting things in an unusual manner, or for the purpose of transporting things that necessarily obstruct a street for the time, but such uses are not necessarily illegal, for streets as passways must frequently be subjected to uses strictly in the line of the purpose for which they exist, but unusual because of the nature of things to be transported or of the vehicles necessary to their transportation. There need be no absolute necessity; it suffices that the necessity is a reasonable one."

Again, our statutes authorize persons desiring to ship freight to demand the delivery of cars for the purpose, require railroads to comply with the demand under penalty, and the shipper to load them within a certain time under penalty, etc. Rev. Stats., arts. 4497-4500.

It would hardly be contended that where a shipper had made such a demand and the company had complied with it, the company should be held liable for negligence of the shipper in loading, resulting in injury to a third person. In this case the shipper did not make a demand under the statute. The shipper was the Texas Car and Foundry Company, and the railway over which the shipment was to be made was the St. Louis Southwestern Railway. The latter road requested the placing of one of its cars upon the track at the foundry and the replacing of it upon its own track after it was loaded. For this service of switching this car, appellee was to be paid the usual charge by the shipper, which

was done. If the shipment had been designed for the road of appellee, the car called for by the shipper, and appellee had furnished the car in response to the demand, it would seem clear that appellee would not be held liable for the injuries sustained by appellant through the negligence of the shipper, the Texas Car and Foundry Company. Having the right to place one of its own cars there to be loaded and shipped over its own line, without incurring such liability, will such liability attach by reason of the fact that the placing of the car to be loaded was at the request of another railway company, over which the shipment was to be made? To hold that the company would not be liable under the first state of facts, and that it would be liable under the second, would be illogical, and the decision would rest upon no sound principle. Our statute law clearly sanctions the commitment of the loading of cars by railway companies to the shipper, and under certain conditions compels them to do so. How then could it reasonably be held under the circumstances here developed that the railway company, in permitting the loading of the car by the shipper, did so at its peril? We do not think it should be held that the law authorizes the railroads only to load cars, in so far as their duties to the public be concerned, in the face of such statutory provisions. Taking this view of the law, we are unable to find any basis in the evidence upon which the liability of appellee could be rested, and therefore approve the action of the court in directing a verdict for defendant.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.