GULF, COLORADO & SANTA FE RAILWAY COMPANY v.
NETTIE BRYANT ET AL.

Decided February 5, 1902.

1.—Pleading—Negligence—Proximate Cause.

Allegations that injury to one loading a car on the track, caused one car to run against another thereon, which, in turn, was alleged to be caused by negligence of the railway company in constructing the track with too steep a grade for safety, were not demurrable on the ground that such a result was not to be anticipated from such construction.

2.—Jury—Weight of Evidence.

The jury, as judges of the weight of evidence, must determine therefrom whether the act of the injured person causing his injury was the result of terror.

3.—Railway Company—Use of Track by Others.

A railway company is responsible for the negligence, not only of its own servants, but of others permitted to move cars over its track, as e. g. the employes of a cotton mill moving cars for its purposes.

4.—Contributory Negligence—Acting Under Terror.

Contributory negligence is not to be imputed to one who, acting in an emergency under sudden terror, chooses a means of avoiding danger which results in his injury.

5.—Negligence—Acting on Information.

Where a person was injured while loading a car, it is immaterial by whom the car was pointed out to him, if it appears that he was loading the right one, nor was it, in such case, error to defendant's prejudice to instruct that it was responsible for the acts of the persons pointing out such car though they were not its agents.

**6.—Proximate Cause—Charge.**

It was error in the charge to require the jury to find that acts of an injured person which, if they existed, necessarily and directly caused his injury were proximate causes, as well as negligent acts, in order to defeat recovery.

**7.—Negligence—Moving Cars—Duty to Look Before Moving Them.**

Whether it was negligence in persons undertaking to move cars upon a track to first look to see if any person was in danger therefrom was a question of fact, and the duty could not be treated by the charge as an absolute one.

**8.—Contributory Negligence—Acting Under Fear—Charge.**

A charge upon contributory negligence is properly refused where the issue as to excuse for such negligence from the act being done under sudden fear is involved and is ignored by the instruction.

Appeal from the District Court of McLennan County.    Tried below before Hon. Marshall Surratt.

*Prendergast & Sandford* and *J. W. Terry,* for appellant.

*D. G. Grantham, J. E. Yantis,* and *Thos. P. Stone,* for appellees.

COLLARD, Associate Justice.—The statement of the nature and result of the suit is correctly given in appellant's brief, as follows:

"This suit was instituted by John Bryant against the appellant and the McGregor Cotton Oil Company, for personal injuries. Bryant died, and Nettie Bryant, his widow, and Clyde Bryant, his daughter, were substituted as parties plaintiff, and alleged that the injuries received resulted in the death of John Bryant. Appellees admitted that the general demurrer of the cotton oil company was good, and on such admission the court sustained such general demurrer and dismissed the case against that company. The trial resulted in a verdict and judgment in favor of the appellees for $5000. Appellant moved for a new trial on substantially the same grounds as are assigned as error, which motion was overruled, and this appeal has been properly prosecuted.

"Plaintiff's petition substantially alleged that on September 25, 1899, John Bryant was in the employ of the McGregor roller mills, and that as part of his duty he was required to load and unload flour and other products from the wagon of said roller mills into cars on the track of appellant, and in the discharge of his duties, on the above named date, he with a load of bran on his wagon went to the defendant railway company's track, at the usual place where he had been accustomed to loading bran, where he found an empty car on the track, and started to load the bran from his wagon into the car for the purpose of shipment, at which time an agent of appellant stopped him and said he was loading the bran in the wrong car, and directed him to load the bran into a box car standing on what is designated and known as the 'McGregor Cotton Oil Mill track,' owned and controlled by appellant, and following the instructions of said agent of appellant, he commenced loading the bran into the car, and while so engaged, C. H. Murphy and T. K. L. Murphy, who were employes working for the McGregor cotton oil mill,

and who were in charge of, controlling, managing, and operating, as agents of the appellants, the cars on said track at the time, and they knowing, or could have known by the exercise of ordinary care, that Bryant was at work on another car standing on the same track with the one he was loading, and above the one on which he was loading, the track being on an incline plane, and the said other car being higher than the one he was loading, the said employes and agents of the said defendant knew that a car started from said inclined plane toward the one where said John Bryant was, would go at a very rapid rate of speed and would strike the cars between it and the one said John Bryant was working in, and cause said other cars to strike the car said John Bryant was in, this said car being attached to the said other cars, and the striking of said cars by the one started by defendant's agents and employes would endanger the life of the said John Bryant. That the striking of the said car by one moving at such a rate of speed as the one started would do, was calculated to cause great and serious injury to anyone situated as said John Bryant was, and as said employes and agents of the defendant knew at that time, but said agents and employes of defendant, disregarding all consideration for the safety and rights of the said John Bryant, and in a reckless, negligent, and careless manner, and without giving any signals or notice of movement of said cars, went to said car standing above these others and started it down said grade, and giving it such momentum that it struck the cars standing above and attached to the one John Bryant was working in, and the striking together of said cars caused such a loud and terrific noise, and there being no one on said moving car to control it or manage or check its speed, it hit the other car with terrible and violent force and created such a noise, caused by the bumping of the cars together, and the rapidity at which it was moving caused the said John Bryant to be greatly frightened and cause him to fear that the said car which he was in would be thrown off the tracks and thereby cause him great injury and probably destroy his life. This condition caused the said John Bryant to attempt to alight from said car onto the wagon, and he did leave said car, but just as he landed on said wagon from said car the said team hitched to his wagon became frightened and put the wagon in motion, which, together with the movement of the car, caused by the striking of it with the other cars that were in motion, caused him to lose his balance and he was propelled to the ground and on the rocks with great force and violence, thereby greatly injuring said John Bryant, from the effects of which his death afterwards resulted.

"The plaintiffs allege and charge that the roadbed and track of the defendant, the Gulf, Colorado & Santa Fe Railway Company, at the point where the said John Bryant was injured as alleged, and all along said spur track had been negligently constructed in such manner as to constantly imperil the lives of the public and especially said John Bryant and others situated as he was at that time, in this: That it was constructed so that there was a steep up grade and inclined plane in the

direction from where said John Bryant was injured to the point where the said cars were turned loose, and the negligence of the said defendant in so constructing its said track and roadbed caused the injuries and death of said John Bryant. These plaintiffs further allege and charge that the said defendant railway company was negligent in this: That it knowingly allowed, and permitted and authorized the servants and employes of the defendant, the McGregor cotton oil mill, to use, run, and operate its cars on said track, when it was known to said railway company that they were not experienced men in the operation of trains and were incompetent to use and operate said cars with safety to the public, and especially the said John Bryant and others engaged in the business which he was then employed at, and the said defendant railway company is liable for the acts of the said servants of the said McGregor cotton oil mill for the reason that they were permitted and authorized by the said railway company, at any and all times whenever requested by said McGregor cotton oil mill, to use and operate said cars on said track for the benefit of both of said defendants herein. And the said defendant railway company by acquiescence had for many years prior to said injuries to said John Bryant ratified and confirmed their right to so use and operate such cars on said track, and had in all things adopted their employment in this way, as the employment and acts of their own servants."

The facts show that the deceased was hauling bran for the McGregor Roller Mills, and he was directed by the mill bookkeeper to load a car with bran on defendant's road. He got a wagon load of bran and conveyed it to defendant's road, and was directed by one Dibble, an employe of defendant, on what track he would find a car to load the bran in, which was a switch of defendant's road for use of the McGregor Cotton Oil Company. He selected a car on the switch, and while unloading his first load, Russell, superintendent of the oil mill, came out where deceased was at work unloading the bran and spoke to him. Settler, an employe of the road, seemed to be taking the number of the cars, and he also came near where deceased was at work. Deceased was engaged in unloading his second load when the accident occurred. He was using trucks, rolling the sacks of bran back to the end of the car, his wagon standing by the car door with the horses (two) hitched to the wagon, not tied. He knew it was about time for the local freight train to come in, and looked for it every time he went to the door. He was back in the car when the oil company's employes turned a car loose, and he (his testimony having been taken after suit but before his death) testified that they, meaning the cars, "bumped against my car." He continued: "I thought the local freight had run in without my knowledge, so I jumped out of the car onto my wagon and fell off the wagon and broke my left arm near the hand, and mashed my hip very badly. I think one of the oil mill hands started the cars down the track that bumped my car and scared me. When the bumping of the cars frightened me, I ran to the door of the car and jumped onto my wagon. The

side track where the car was standing was lower at the west end, and the cars started by the employes of the oil mill were higher up the track than where I was. There were several cars on the side track, and I think the car I was on was near the center of the string of cars." He says on cross examination: "The car that came down the track did not touch the car I was in, but it did collide with the other cars on the same track, and the bumping, rattling noise of the cars was what frightened me so that I jumped. I did not know no injury would come to me by remaining in the car, nor did I take time to theorize whether any danger would come to me or not, but acted on the first impulses of the mind and jumped. * * * Just as I landed on the wagon my team started, and I failed to gain my balance and fell off and crippled myself. I was accustomed to loading and unloading cars on the track at McGregor; had been so engaged several years. * * * Of course, I intended to catch the team and fell off before I got to the lines." He says: "The sudden bumping of the cars together was so unexpected to me that I was scared, and my first thought was to get out of the car. In fact, I don't remember that I took time to think, but ran to the door and jumped out." He was watching for the local, knowing it was about time for it to come in. He had just looked up the track and had seen nothing of it, but did not know but that it had run in very rapidly and had struck the car standing on the track. He says: "My horses were not easily frightened by the cars. Had used the same team a long while and always left them standing, as I did that day. * * * I was in the car when the cars began bumping, and I jumped and my team jumped; don't know for certain which one of us was frightened first."

There was other testimony to the effect that no car reached the car deceased was on. The servants of the oil mill turned a car down the track, which, colliding with another car, sent it down the track near to the car plaintiff was on, if it did not strike it. Deceased brought this suit and his depositions were taken, but he died before trial.

It is not necessary to recite other testimony at this time, as that stated is sufficient to show the issues of fact.

*Opinion.*—1. We find no error in the overruling of defendant's general demurrer or special exceptions to the petition. If the track was negligently constructed as alleged, and that condition occasioned the injuries alleged, defendant would be charged with such negligence.

2. Appellant contends that the verdict is contrary to the law, in that the great preponderance of the evidence shows that Bryant did not jump from the car because of fright and terror, but that he jumped onto the wagon to stop his horses, which had started to run away. The jury were the judges of the weight of the evidence and the credibility of the witnesses, and it is not the province of the court to direct what testimony the jury should believe or not believe.

3. It is insisted by appellant that the court should have granted a

new trial because there was no evidence to warrant the finding that the parties who moved the car were the agents or servants of defendant, or that their negligence could render it liable. It was not necessary, in order to bind defendant for the negligence alleged, that its agents and servants in its immediate employment turned the car loose on the incline, so causing injury to Bryant. The oil mill people were using the track and cars with the consent of the railway company, and the law is that a railway company can not lease its road to another without authority of statute, so as to relieve it from its obligation to the public. Without such authority, the railway company would be liable for all acts of persons to whom it confides the operation of the road. Railway v. Underwood, 67 Texas, 592, 593; Railway v. Moody, 71 Texas, 616.

4. It is claimed by appellant that the court should have granted a new trial because the verdict was contrary to the law and the evidence, the undisputed evidence showing that Bryant was never in danger on the car, and neither the employes of defendant nor of the mill company did anything that caused him any danger, and his injuries were not the result of anything done by the servants of the mill company or the railroad. And again it is insisted that the court should have granted a new trial, because the evidence shows Bryant jumped from the car when there was no necessity therefor, without stopping to think, and from unreasonable fright, without stopping to think and without taking any care, when the undisputed evidence shows he was in no danger, and the evidence shows he was guilty of contributory negligence, contributing to his own injury. In Railway v. Neff, 87 Texas, 309, our Supreme Court quotes with approval language of the Alabama court, in Cook v. Parkham, 24 Alabama, 21, as follows: "That the death of the slave may have been the result of fright or want of presence of mind occasioned by circumstances of excitement, confusion, and danger, brought about by the negligent acts of the defendants, should not be imputed to him as a fault, nor can we regard it in any sense as misconduct if under like circumstances one should mistake the best means of safety and lose his life in the effort to preserve it." . In the Neff case, our own Supreme Court say: "When prudence itself is destroyed and judgment yields to sudden impulse, when there is neither time nor capacity to reflect, how can anyone say what a man prudent under ordinary circumstances would do if he should be so situated? The rule is sound and just which holds the party guilty of negligence responsible for the result, if that negligence has caused another to be surrounded by such circumstances as to him appear to threaten the destruction of his life or serious injury to his person, whether that person be prudent or imprudent, if in an effort to save his life he makes a choice of means from which injury results and notwithstanding it may turn out that if he had done differently, or had done nothing, he would have escaped injury altogether."

The trial court in the charge observed the rule laid down in the Neff case, which is the law, and was warranted by the facts in so doing. So

we do not believe the court should have granted a new trial on the ground that the verdict was against the law and the evidence.

5. There is no testimony that Bryant was loading the wrong car; hence it is immaterial whether defendant pointed out the car to him which he was loading, or who pointed it out to him. It was evidently the right car to load. The foregoing disposes of the eleventh assignment of error adversely to appellant.

6. The court instructed the jury to the effect that if defendant, through its employes, knew the employes of the oil mill were accustomed to move the cars near its mill in the manner in which they moved the car in this instance, defendant would be bound by the acts of the employes of the oil mill; and that if defendant's agent, Carl Dibble, at the time he stopped Bryant from unloading his wagon in the car where he first began unloading near the depot, told Bryant to unload in the car on the mill switch at which he was injured, and that Bryant acted on such instructions in going to the switch to unload, then the act of Dibble in so directing, would be the act of defendant. Again we repeat that there was no attempt to show Bryant was unloading in a wrong car when he was hurt, and it is of no consequence who told him to unload where he did, and there was no error in the charge detrimental to appellant, notwithstanding there may be no evidence showing appellant knew the mill employes were accustomed to move cars on the switch. Besides this, defendant would be liable for injuries caused by persons moving the cars with its consent.

7. It is insisted that the court erred in charging the jury as follows: "If you believe from the evidence that said Bryant was well acquainted with the situation of the said track and the cars, and that they were constantly being moved or liable to be moved on said track in such manner as to create a loud noise, and that such noise was calculated to frighten his horses and cause them to run away, and that he negligently left them unhitched and attached to his said wagon, and that after his said horses became frightened and started to run, he carelessly, and without being frightened, as alleged, jumped from the car at which he was at work onto his said wagon, without regard for his own safety, and in so doing lost his footing and balance and fell to the ground, and that such acts were the direct and proximate cause of the injuries received by him, and you further believe said conduct and acts on the part of said John Bryant were negligence on his part, and that but therefor he would not have been injured, then you will find for the defendant, although you may believe that the defendant was guilty of the several acts of negligence charged by the plaintiff."

We must say that it was error to require the jury to find that the acts and conduct of Bryant enumerated, if found, were the proximate cause of the injuries he received. Such acts would necessarily be, if found to exist, the proximate cause of the injuries sustained. Railway v. Rowland, 90 Texas, 365; Railway v. McCoy, 90 Texas, 265. In both

the cases cited, the Supreme Court reversed and remanded for a similar error.

8. We believe the qualification made by the court to a special charge asked and given was erroneous. The charge asked and given is as follows: "You are further charged that before you can find for the plaintiffs under any theory of the case, you must believe from the evidence that the moving of the cars, as alleged in plaintiff's petition, was the direct and proximate cause of the injuries to the said John Bryant. That is, you must believe from the evidence that the said persons moving the said cars ought to have foreseen that as a result of such moving, the injuries, or some such similar injuries, to the said John Bryant would probably result."

The qualification is as follows: "In connection with the foregoing special charge, you are instructed that it was the duty of the persons moving said cars to have looked along the track in front of such cars to ascertain if anyone was in danger of being injured thereby, and if you believe from the evidence that said persons, had they so looked down the track before starting said cars, could have seen said Bryant by exercising that care which an ordinarily prudent person would have exercised under the same circumstances, then you will consider said special charge and the entire case as though the evidence showed that said persons moving the car saw said Bryant before they started said car in motion, and if a person of ordinary care and prudence would have foreseen that as a result of so moving said cars said Bryant would probably be injured, then the persons moving said cars ought to have foreseen said result, but if a person of ordinary care and prudence would not have foreseen as a result of such moving that said Bryant would probably be injured, then the persons moving said cars ought not to be held to have foreseen such result."

It was error to tell the jury, as in the qualification to the charge asked, that it was the duty of the persons moving the cars to have looked along the track in front of such cars to ascertain if anyone was in danger of being injured thereby. That question should have been left to the jury. Unless a duty is statutory, it is wrong to charge the jury that such a duty is required. Railway v. Waller, 62 S. W. Rep., 554. The court should not tell the jury that certain specific acts were required of the persons moving the cars. Calhoun v. Railway, 84 Texas, 229, and cases cited; Railway v. Box, 81 Texas, 674. It is error for the trial judge to define duties, neglect of which would be negligence in the absence of a statute defining such duties. Railway v. Lee, 70 Texas, 496; See 2 Buckler's Civil Dig., 527, citing numerous cases to the point; see also, 57 Texas, 82; 60 Texas, 142; 62 Texas, 517.

9. It is assigned as error that the court refused the following instruction requested by defendant: "You are further charged that if you believe from the evidence that the said John Bryant left his team standing at or near the said car hitched to his said wagon, and untied or unsecured, to prevent the same from moving off and running away; and

you further find that he jumped from the said car onto the said wagon after the said team had started to move off and run away; and you further believe that a reasonably prudent person, under all the facts and circumstances surrounding said occasion would not have jumped from the said car onto the said wagon when the team was so untied and unsecured, and when the said team had so started to move off and run away, then and in that event you will find for the defendant."

The requested charge ignored the issue of imminent peril and Bryant's reasonable belief of such peril. The same may be said of requested charge number 5 which the court refused.

10. The matter of notice referred to in the twenty-fifth assignment of error need not be discussed, as plaintiffs can give notice.

In the foregoing we have decided all material issues presented, and it is not necessary to notice such issues but once, the ruling necessarily being the same.

Because of the errors pointed out, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*