264 P.2d 401

SOUTHERN PAC. CO. et al.

v.

BOLEN.

No. 5674.

Supreme Court of Arizona.

Nov. 30, 1953.

Rehearing Denied Dec. 22, 1953.

Knapp, Boyle, Bilby & Thompson, and Richard B. Evans, Tucson, Lawrence L. Howe, San Francisco, Cal., of counsel, for appellant Southern Pac. Co.

Paul J. Cella, Tucson, for appellant Eloy Ranch Co.

Bob Barber and Franklin E. Vaughan, Tucson, for appellee.

WINDES, Justice.

Suit by appellee Donald Bolen, acting through his father and next friend, herein referred to as plaintiff, against appellants Southern Pacific Company, a corporation, and Eloy Ranch Company, a corporation, hereinafter referred to as railroad and ranch company respectively, for personal injury because of the alleged negligence of defendants. Trial was had before a jury and verdict and judgment for $65,000 against defendants, both of which separately appeal.

The factual basis essential to a solution of the matter is substantially as follows: Defendant railroad owns and operates a railroad through the town of Eloy, Arizona, and owns station grounds adjacent to its right-of-way. Located on the property owned by railroad is a packing shed with a railroad spur track running alongside thereof. Defendant ranch company operated the packing shed. The agreements under which the packing shed and the spur track were operated are reflected in a lease from railroad of the property upon which the shed is located and an industrial track agreement whereby railroad agreed to operate the spur track for the purpose of serving ranch company. It is conceded that railroad under the lease and the industrial agreement retained the right to control the spur track and did not expressly give ranch company any permit to use the same for and on behalf of railroad. Railroad had no duties to perform in connection with the loading of the cars, but when requested by ranch company it would spot cars on the spur track and after loading would remove them therefrom. It seems that in the process of the loading operation ranch company after the cars had been spotted, without calling for assistance from railroad or without express authorization would move the cars by means of pinch bar or jack along the track. There was evidence from which a jury could find there was a pathway across the spur that residents living south thereof continually used in crossing to the north side or business section of the town; that on the day of the accident—May 1, 1945—about 7:30 or 7:45 p. m., two loaded cars were standing about four feet apart on the track at right angles to the alleged pathway; that while plaintiff was crossing between the cars a third car, which had been started in motion by means

of pinch bar by employees of ranch company, bumped into one of the standing cars forcing them together, as a result of which plaintiff sustained personal injuries, resulting in amputation of his right arm, the basis of this suit.

We will consider first the appeal of the railroad. Its first assignment of error is in effect that the court erred in denying its motion for a directed verdict for the reason that there was no evidence that it was guilty of any negligence that could have caused the accident and the resulting injury. It being conceded that no employee of railroad participated in the loading operation or in the movement of the car which was the contributing cause of plaintiff's injury, if railroad is liable it must be on the ground that it is responsible for the acts of the employees of ranch company in pinching the car down the spur.

■ There was evidence to the effect that the spur track was higher at the east end where it joined the main track than at the west where there was a dead end; that it had been customary for railroad in furnishing cars to ranch company to spot them at the east or higher end of the spur from where the ranch company would jack or pinch them down to the loading shed and, after loading by the same means, would start the cars in motion and then by their own momentum they would roll to the west or dead end where railroad would pick them up for shipment. Railroad's position is that this does not create a situation that would impose liability upon it for the negligent acts of ranch company in thus moving the cars along the spur. It is contended that the arrangement between railroad and ranch company is embodied in the lease and track agreement whereby railroad retains control of the spur and agrees to operate the same for the purpose of serving ranch company. Unquestionably such is the effect of the lease and agreement but a solution of the problem calls for a look beyond these written instruments. Railroad argues that because its agreement did not expressly permit defendant ranch company to use its tracks that we must accept for all legal purposes that no such permit existed. We do not think this position is sound. If the facts warrant, permission or license could be shown independent of the written agreements.

■ All parties agree that the general rule is that the owner of a railroad cannot by lease or agreement turn the operation thereof over to another and thereby avoid its obligation to the public for the proper and careful exercise of its franchise, and under such circumstances the owner of the road would be liable for the negligence of a lessee or licensee while operating the same. It cannot gain immunity by delegating the duties imposed upon it by its franchise. While conceding such to be the general rule, railroad urges that its application is limited to the operation of a railroad as such and is not applicable to the movement of cars on a spur track under the circumstances herein.

We believe the rule is not so limited nor do the cases submitted by railroad warrant such a conclusion. We have read them all and find none which we interpret as holding that where a railroad company by consent or acquiescence allows another to move cars upon its tracks it is not responsible for the manner of the movement. For illustration, the Texas case of Washington v. Texas & Ft. S. Ry. Co., 22 Tex.Civ.App. 189, 54 S.W. 1092, relied upon by railroad, involved an accident occurring as a result of a loading operation. Subsequently the Texas court was presented with a fact situation similar to that before us and applied the general rule of imposing liability upon the railroad company. Gulf, C. & S. F. Ry. Co. v. Bryant, 30 Tex.Civ.App. 4, 66 S.W. 804. Therein an instruction was approved which stated that if the railroad company through its employees knew the employees of the company moving the car were accustomed to making such movement in the manner therein described, the railroad company would be liable for injury resulting from the movement.

A somewhat similar situation arose in the case of Dolcito Quarry Co. v. Cruse-Crawford Mfg. Co., 19 Ala.App. 643, 100 So. 72, 74. Therein the trial court found (apparently by inference) that by arrangement and consent between the defendants the railroad company would push the empties to a quarry for loading, and when loaded the quarry company would let them down the track to the main line where the railroad company picked them up. Damage resulted from the negligence of the quarry company's employees in the operation of moving the cars. The same contention was made there as here and the Alabama court said:

"* * *. This question turns upon (1) whether there is any evidence to support the legal inference that the use of the Louisville & Nashville car and track by the quarry company at the time of the accident was by agreement or permission of the defendant the Louisville & Nashville Railroad Company; * * *

"* * * There was evidence that this spur track was connected with the main line of the Louisville & Nashville Railroad Company; that its engines operated over it in pushing cars up to the quarry; that the cars so loaded were 'let down' that is, permitted to run down grade by gravity, and turned over to the Louisville & Nashville Railroad for transportation; that the 'letting down' was done by the employees of the defendant quarry company and the 'pushing up' of the empties was done by engines bearing the initial and numbers of the Louisville & Nashville Railroad Company; that this was a continuing practice over this spur and was done openly. From these facts it would not require a very astute mind to arrive at the conclusion reached by the court in his findings."

324

■ We think the correct rule is that where a railroad company by consent permits or acquiesces in another's movement of its rolling stock upon tracks under its control, this amounts to the granting of an implied license for such movement, and the railroad company cannot under such circumstances enjoy immunity from the negligent acts of the implied licensee. Kansas in the early case of Smith v. Atchison, Topeka & Santa Fe Railroad Co., 25 Kan. 738, is to this effect. Railroad criticizes this case but it seems to be in harmony with the other jurisdictions which have been called upon to solve the problem. Certainly railroad is not responsible where one as a trespasser without permission of the company undertakes to move its rolling stock. Such was the situation in Gulf & S. I. R. Co. v. McLeod, 152 Miss. 9, 118 So. 347, relied upon by railroad. There was sufficient evidence in the case at bar to warrant an inference that railroad consented to the method of movement over a long period of time and thereby in effect granted license to use its track.

■ Since the case must be returned for a new trial for reasons hereinafter stated, if the evidence then submitted is in conflict on the question of implied license to move its rolling stock, or if the circumstances warrant one of two conclusions on the question, the matter should be submitted to the jury for decision. The court properly denied the motion for directed verdict.

■ It is claimed the lower court erred in giving plaintiff's instruction No. 4 which reads as follows:

"You are instructed, Members of the Jury, that it is the duty of a railroad company, its agents and employees, when operating or causing or permitting the moving of any engines or cars along its tracks, to provide for the warning of any pedestrians who may be on its tracks or right of way at a place where said company has reason to anticipate their presence.

"If you believe from the evidence that the plaintiff, Donald Bolen, was crossing the tracks of the defendant, Southern Pacific Company, at a place where said company had reason to anticipate persons might be crossing, and that said company, by its agents, permitted and caused a car to be moved, which in turn hit a car standing still and moved it so as to cause the injury complained of by the plaintiff, and that such moving of the car was done without blowing of whistle, ringing of a bell, flashing of lights, or any other warning signal, then said company was guilty of negligence in so permitting the moving of such car."

It will be noted that the court in effect told the jury that if the defendant ranch company failed to blow a whistle, ring a bell, flash lights or give other warning signal it was guilty of negligence. This was the equivalent of directing a verdict for

plaintiff for the reason that admittedly no such signal was given. The correct rule is that (except in case of negligence per se) the court should not hypothetically tell the jury what facts constitute negligence unless from all the circumstances the only reasonable inference is that a reasonably prudent person would not have committed the act or failed to commit the act. 65 C.J.S., Negligence, § 288. Apparently the trial court was of the opinion that these defendants, in moving the car in the manner they did, were subject to the same rules as a train propelled by a live engine when intersecting a crossing. The method of operation is too dissimilar to warrant such position. The common law rules of negligence should control the operation and duties to the plaintiff. If there be any facts or circumstances whereby the jury might say the employees of ranch company acted as reasonable and prudent persons in causing the cars to roll down the track at the time and in the manner in which it was done, without the signals required in the instruction, it is a jury question whether their conduct was negligent. We think the circumstances are not such as warrant the court in telling the jury that the failure to whistle, ring the bell, or give other signals was as a matter of law negligent. By so doing it invaded the province of the jury.

 The court also by instruction No. 5 told the jury in effect that if the car being moved along the track had no person upon it in control of its brakes or if there were such person he failed to properly apply the same, railroad was guilty of negligence. There appears to be no evidence that there was any person upon the car controlling the same. Consequently, there being nothing upon which the jury could base a finding that someone was on the car and properly or improperly applied the brakes, the effect of the instruction was a directed verdict against railroad on the question of liability. This instruction also carries the same vice as instruction No. 4 in that it hypothetically instructs the jury what circumstances constitute common law negligence, and under the situation herein, this was error.

 Objection is made to plaintiff's instruction No. 2.

"Ladies and Gentlemen of the Jury, you are instructed that where pedestrians customarily, with the knowledge of a railroad company's agents, cross the tracks of such company at a place where an injury was received, the agents of the railroad company are under a duty to exercise care in anticipating the presence of such pedestrians and to take reasonable precautions not to injure them.

"If you believe from the evidence that the plaintiff, Donald Bolen, was crossing the tracks of the defendant, Southern Pacific Company, at such a place, then it was the duty of the agents or employees of the defendant, Southern Pacific Company, who per-

mitted a car in motion to hit a car at rest and to so move the car at rest so as to cause the injury complained of, to take reasonable precautions so that such car would not cause plaintiff's injuries."

It is suggested that this instruction assumes railroad failed to take reasonable precautions and plaintiff's injuries were a result thereof; that it assumes plaintiff was a licensee and that railroad permitted a car to move and hit a car at rest. We cannot interpret the instruction as assuming that railroad failed to take reasonable precautions. The instruction requires the jury to find the facts before imposing the duty to use such precautions. Neither do we think it necessarily carries the presumption that plaintiff was a licensee. The instruction is not clear in this respect, however. It says that if the jury believes plaintiff was crossing at "such a place". No doubt this refers to the place theretofore described, that is, where pedestrians customarily crossed with the knowledge of the railroad. Any difficulty in this respect may be obviated in a new trial. The instruction does assume that railroad permitted the car to be moved. As heretofore stated, this is error unless on new trial there is no jury question as to whether railroad permitted or acquiesced in ranch company using the track for the purposes shown herein.

▮ Railroad urges that, even admitting there was evidence of a pathway which normally would place one who was crossing thereon in the category of licensee rather than a trespasser, when plaintiff attempted to pass between cars split a few feet apart, he exceeded the privilege and extent of the license and thereby became a trespasser. To support this contention there are submitted the following cases: Central Railroad & Banking Co. v. Rylee, 87 Ga. 491, 13 S.E. 584, 13 L.R.A. 634, which involved an attempt to crawl under cars on a blocked passageway; Gulf, C. & S. F. Ry. Co. v. Dees, 44 Okl. 118, 143 P. 852, L.R.A.1918E, 396, where one attempted to cross between coupled cars with live engine attached; American Mut. Liability Ins. Co. v. Louisville & N. R. Co., 250 Ala. 354, 34 So.2d 474, where the injured one attempted to cross through a narrow opening 35 or 40 feet from the pathway while switching crew was in operation; Brackett's Adm'r v. Louisville & N. R. Co., 111 S.W. 710, 33 Ky.Law Rep. 921, 19 L.R.A.,N.S., 558, where pathway was blocked and pedestrian attempted to cross between cars some distance therefrom; and finally, this court's decision in Barry v. Southern Pac. Co., 64 Ariz. 116, 166 P.2d 825, where one went to sleep on the tracks. In the matter before us, there is evidence from which the jury could find there was a path and the cars were split thereon. No such condition existed in the cases relied upon. We do not think one using a customary avenue of travel over tracks forfeits his status as a licensee by passing between cars split on the location of such customary place of crossing. Had plaintiff deviated as in the

cases relied upon by the railroad, a different problem would be presented.

■■■ The evidence indicated the accident happened about 7:30 in the evening at a time when one witness said it was not completely dark, "but was getting dark". Railroad contends that even if there existed a pathway which in effect created a license for people to cross, such license did not extend to crossing at night. There was some evidence that others crossed about this time of day and we do not think the license, if any, was limited to crossing in broad daylight.

■■■ Ranch company, in addition to claiming error in giving the instructions heretofore discussed, also urges that the court erred in giving plaintiff's instruction No. 1, wherein it in effect told the jury that where the railroad company permits or invites pedestrians to use a well-defined pathway across its tracks for a long time, it was its duty to anticipate the presence of pedestrians on the track and take reasonable precautions not to injure them. The word "invite" was unfortunate in that there was no evidence of invitation except to the extent that the user with the consent of the company might be considered an implied invitee. In this respect the instruction was misleading. With respect to the thought that the company should anticipate the presence of pedestrians, the important thing to consider is the probability or improbability within the knowledge of the defendant of their presence at the time and place. It merely influences the degree of care imposed upon

the defendant under such circumstances. We believe the sound rule to be that under the situation covered by the instruction the defendant is required to use that degree of care which is commensurate with the probability of persons making use of the crossing at the time and place involved. Chicago, R. I. & P. Ry. Co. v. McCleary, 175 Okl. 347, 53 P.2d 555. It all comes back to the question of reasonable care under all the circumstances and one of the circumstances is the probability of the presence of persons on the crossing at the time. The rule is well stated in Ft. Worth & D. C. Ry. Co. v. Longino, 54 Tex.Civ.App. 87, 118 S.W. 198, 201, in the following language:

"We take it to be well settled that railroad companies are charged with the duty of exercising ordinary care to discover the presence of persons on their tracks, and to avoid injuring them at those places where, under all the circumstances, they are reasonably chargeable with knowledge that such persons are liable to be; and in our judgment it can make no difference, so far as the duty of the railroad company is concerned, whether such persons are technically to be classed as trespassers, licensees, or persons using the company's tracks as of right. In all such cases the duty is imposed because of the broad rule of humanity that one engaged in so dangerous a business is required to exercise ordinary care to avoid injuring another when the presence of and danger to such other person·

328

is reasonably to be anticipated. * * at crossings and such portions of its track as may be commonly used as footway or crossing, which is known to the company and at which persons may be expected, (railroad company) must use ordinary care to discover their presence and to avoid inflicting injury upon them * * *."

It is claimed that the verdict is so excessive as to make a new trial necessary. While we are impressed with this view, it is unnecessary to discuss this assignment since a new trial is being ordered. All other meritorious assignments are covered.

Reversed with directions for a new trial in conformity with the principles announced herein.

STANFORD, C. J., and PHELPS, LA PRADE, and UDALL, JJ., concurring.