[Civil No. 2026.   Filed April 16, 1923.]

[214 Pac. 317.]

# THE ARIZONA COPPER COMPANY, LIMITED, a Corporation, Appellant, v. ANTANACIO GARCIA, Appellee.

1. RAILROADS—PUBLIC USE OF CROSSING CANNOT BE IGNORED.—Long-continued travel over a crossing, known to the company operating the railroad, cannot be ignored in the operation of trains, notwithstanding unlawful methods may have marked the laying out of the highway.

2. RAILROADS—CROSSING SIGNS RECOGNITION OF CROSSING.—Placing railroad crossing signs at a crossing to warn travelers is a recognition of its location and an invitation to cross on which the public may rely, although the crossing was not established in manner provided by statute.

3 RAILROADS — COMMON-LAW DUTY REQUIRES REASONABLE PRECAUTIONS AT RECOGNIZED CROSSING.—Where a railroad crossing, though not lawfully established, has been recognized by establishing warning signs, and the duty to those using it publicly assumed, the company operating the railroad is required as part of its common-law liability to take such further reasonable precautions by giving signals as the exigencies of the situation may demand.

4. RAILROADS—PASSENGER IN UNLICENSED AUTOMOBILE MAY RECOVER FOR NEGLIGENCE.—That one negligently injured at a railroad crossing was a passenger in an unlicensed automobile does not defeat recovery.

5. WITNESSES—REFUSAL TO PERMIT RAILROAD TO EXAMINE DOCTOR CONCERNING PATIENT INJURED BY RAILROAD HELD NOT ERROR.—In an action against a railroad company for personal injuries, where plaintiff's brother has testified that the physician treating him removed fragments of bone from his leg, under Civil Code of 1913,

———

See 28 Cyc. 40; 33 Cyc. 921; 40 Cyc. 2388.

paragraph 1677, subdivision 6, it is not error to deny the defendant the right to examine the physician for the purpose of contradicting such testimony by testimony of the physician himself.

APPEAL from a judgment of the Superior Court of the County of Greenlee. W. R. Chambers, Judge. Affirmed.

Messrs. Ellinwood & Ross and Mr. H. A. Elliott, for Appellant.

Mr. L. Kearney, for Appellee.

LYMAN, J.—Garcia, the appellee, claims to have been injured because of inadequate warning given him of the approach of appellant's railway train at an intersection of its road and the country highway along which he was traveling. The crossing was at grade, as a part of a highway laid out after the construction of the railroad without permission of the Corporation Commission, as provided by statute. Paragraph 2319, Civ. Code Ariz. The crossing at the time of the collision and during a number of years immediately preceding was upon a thoroughfare between populous communities and frequented by travelers. The appellant had indicated the crossing by large and conspicuous signs upon which were printed in large letters, "Railroad Crossing," "Stop, Look and Listen," "Look Out for Trains," and "Danger," and they were so placed as to give persons approaching the crossing on the highway timely warning of its location. Garcia, as well as the driver of the conveyance in which he was riding, were residents of that locality, and well acquainted with the location and peculiarities of the crossing.

Appellant, Arizona Copper Company, Limited, defended by offering to show by a plea in bar and tender of evidence that the crossing of its track by the highway was unlawful, because not assented

to by it nor authorized by the Corporation Commission, but that the crossing had been imposed on its right of way over its protest addressed to the board of supervisors of that county. The plea in bar was stricken, and offer of proof upon that point under the general denial rejected.

Under these circumstances, what duty did the appellant owe to Garcia? Appellant answers that it owed no duty except to avoid willful injury; that Garcia was a trespasser, or, at most, a licensee accepting permission to enter appellant's right of way with the perils incident to that status. The long-continued current of travel over this crossing was known to appellant, and could not be ignored in the operation of its trains, notwithstanding unlawful and reprehensible methods may have marked the laying out of the highway over appellant's right of way. *Haley* v. *Kansas City, M. & B. Ry. Co.,* 113 Ala. 640, 21 South. 357. Whatever protest may have been addressed to the board of supervisors against laying a highway over the railroad tracks and right of way, a protest of which persons using the crossing are not presumed to have had notice, seems to have been followed by acquiescence of appellant in the use of the crossing by the public. The placing of signs at the crossing was a recognition of the location of the crossing at that point and public declaration of that fact which persons traveling that way could hardly have construed otherwise than as an invitation to cross upon such conditions as apply generally to a public crossing. Although the crossing was not established in the manner provided by statute, yet the invitation to cross was displayed, and the public had a right to rely upon it. *Lillstrom* v. *Northern Pac. R. Co.,* 53 Minn. 464, 20 L. R. A. 587, 55 N. W. 624; *Ray* v. *Chesapeake etc. Ry. Co.,* 57 W. Va. 333,

50 S. E. 413; *Carleton* v. *Franconia Iron & Steel Co.,* 99 Mass. 216.

It may be said that establishing signs at the crossing as appellant had done for the safety of the public should not be used as the basis of liability for further precautions. That, however, is not an unusual consequence. A duty once assumed must be so performed as not to injure one who has been led by such assumption to rely upon it. The crossing having been recognized, and the duty to those using it publicly assumed, appellant was required as a part of its common-law liability in the premises, regardless of statute, to take such reasonable precautions as the exigencies of the situation called for to avoid injury of those using the crossing. *Sweeny* v. *Old Colony etc. R. Co.,* 10 Allen (Mass.), 368, 87 Am. Dec. 644; *Murphy* v. *Boston etc. R. Co.,* 133 Mass. 121; *Byrne* v. *New York Central & H. R. R. Co.,* 104 N. Y. 362, 58 Am. Rep. 512, 10 N. E. 539; *Barry* v. *New York Cent. & H. R. R. Co.,* 92 N. Y. 289, 44 Am. Rep. 377.

The jury was not instructed to measure the duty of appellant by any statutory requirements to give signals at public crossings, but was instructed, and correctly, in regard to appellant's common-law duty in the premises. *Continental Improvement Co.* v. *Stead,* 95 U. S. 161, 24 L. Ed. 403 (see, also, Rose's U. S. Notes).

At the instant of the accident Garcia was riding in an unlicensed automobile. That fact raises the second question: Did that fact affect the liability of the appellant, or lessen its duty in the premises? It is not claimed that the legal status of the automobile was the cause of the accident, or in any manner or degree contributed to it; but it is reasoned that an unlicensed vehicle is an outlaw which has no right on the highways, and is therefore a tres-

passer to which those rightfully and lawfully going about their business owe no duty of care or caution to avoid injury. The statute regulating the use of automobiles forbids under penalty the use of the highways by an unlicensed automobile. Ordinarily a breach of duty due the state, or violation of a penal statute, does not affect the right of recovery for injuries negligently inflicted, unless there is some relation of cause and effect between them. The failure of the owner of the machine in which Garcia was a passenger to obey the registration laws in no way contributed to the accident, and would seem to furnish no defense to appellant. *State ex rel. Oliver Iron Mining Co.* v. *City of Ely,* 129 Minn. 40, Ann. Cas. 1916B, 189, 151 N. W. 545; *Gilman* v. *Central Ry. Co.,* 93 Vt. 340, 16 A. L. R. 1102, 107 Atl. 122.

This conclusion is supported by most of the courts, with the conspicuous exception of the Supreme Judicial Court of Massachusetts. The statutes of Arizona and Massachusetts are in most respects alike. Some of the opinions of the Massachusetts court seem broad enough in their statements to apply to a statute like ours, but it should be noted that there is a peculiarity in the Massachusetts statute which is not found in ours, and that peculiarity is the basis of the conclusion reached by the Massachusetts court. The Massachusetts statute provides a penalty for failure to carry lights and similar appliances, but does not forbid the use of the highways to automobiles on account of failure to carry lights and similar appliances; but for failure to register the automobile there is provided both a penalty and a prohibition to use the highways. From this distinction the court reasons that the statute contemplates some more serious consequence from failure to register than the mere payment of a penalty, and that consequence must be to make the offending car an

outlaw and all those using it trespassers upon the highway. *Dudley* v. *Northampton Street R. Co.*, 202 Mass. 443, 23 L. R. A. (N. S.) 561, 89 N. E. 25. This reasoning and this conclusion have been followed by all the later rulings upon this subject in Massachusetts, and in the one or two other states which have adopted the Massachusetts statute. However naturally such conclusion flows from the terms of the Massachusetts statute, the premises upon which it is based are not found in our statute. There is, therefore, no reason why we should adopt the ruling of the Massachusetts court.

The third question raised by this appeal is: Was appellant entitled to examine Garcia's physician for the purpose of contradicting evidence introduced by Garcia, of what the physician did in the course of his treatment incident to the injury? Garcia's brother testified that fragments of bone were removed from Garcia's leg by the physician. Appellant offered to contradict that testimony by the testimony of the same physician, but was not permitted to do so.

The rights of the parties in the premises are governed by statute, which reads as follows:

"A physician or surgeon cannot be examined, without the consent of his patient, as to any communication made by his patient with reference to any physical or supposed physical disease or any knowledge obtained by personal examination of such patient; provided, that if a person offer himself as a witness and voluntarily testify with reference to such communications, that is to be deemed a consent to the examination of such physician." Rev. Stats. Ariz. (Civ. Code 1913), par. 1677, subd. 6.

In *Arizona & New Mexico Ry.* v. *Clark*, 235 U. S. 669, 59 L. Ed. 415, L. R. A. 1915C, 834, 35 Sup. Ct. Rep. 210, this statute was construed in opinions which discuss at some length the conclusions reached. A dissenting opinion by Mr. Justice HUGHES, re-

ferring to the construction placed upon the statute by the prevailing opinion of the court, says:

"It should be supposed that it was the legislative intent to protect the patient in preserving secrecy with respect to his ailments, and not to give him a monopoly of testimony as to his condition while under treatment."

This fairly expresses the argument of appellant with reference to this question. The dissenting opinion further goes on to say:

"Here not only did the plaintiff introduce the evidence of his nurse, describing in detail his bodily injuries and the medical treatment, but the plaintiff offered himself as a witness and voluntarily testified as to his bodily condition. His testimony covered the time during which he was under the physician's examination, and it was upon this testimony that he sought to have the extent of his injuries determined by the jury and damages awarded accordingly. To permit him, while thus disclosing his physical disorders, to claim a privilege in order to protect himself from contradiction by his physician as to the same matter, would be, as it seems to me, so inconsistent with the proper administration of justice that we are not at liberty to find a warrant for this procedure in the statute unless its language prohibits any other construction."

This quotation clearly indicates that the precise question was before the court in that case which is raised on this appeal, and the decision of the court expressed in the majority opinion is adverse to appellant's contention. Mr. Justice PITNEY there says:

"To construe the act in accordance with the contention of plaintiff in error would not only be a departure from its language, but would render it inapplicable in all cases where the 'physical or supposed physical disease' is the subject of judicial inquiry, and where any averment respecting it is made in pleading or evidence upon the subject is introduced at the trial in behalf of the patient. This

would deprive the privilege of the greater part of its value, by confining its enjoyment to the comparatively rare and unimportant instances where the patient might have no occasion to raise an issue or introduce evidence on the subject, or where the patient's disease might happen to be under investigation in a controversy between other parties. We are constrained to reject this construction.''

The construction of the statute in question as embodied in this quotation is the law of this state. In accordance with it the ruling of the trial court excluding the testimony of the physician was correct.

No other questions are raised by this appeal.

The judgment of the trial court will be affirmed.

ROSS, J., and FAIRES, Superior Judge, concur.