**Alfredo Jaime DELGADO, Plaintiff,**

v.

**SOUTHERN PACIFIC TRANSPORTA-TION COMPANY, Defendant.**

**No. CIV 90–1225 PHX SMM.**

United States District Court,
D. Arizona.

Feb. 1, 1991.

Federico C. Sayre (argued), Sayre, Moreno, Purcell & Boucher, Los Angeles, Cal., Thomas F. Dasse, Cora Perez, Langerman, Begam, Lewis & Marks, P.A., Phoenix, Ariz., for plaintiff.

Terrance L. Sims (argued), David L. Beaugureau, Amy Schwartz, Tower, Byrne, Beaugureau & Shaw, P.C., Phoenix, Ariz., for defendant.

## ORDER

McNAMEE, District Judge.

Defendant Southern Pacific Transportation Company ("Southern Pacific") filed a Motion for Summary Judgment on July 2, 1990. Plaintiff Alfredo Jaime Delgado ("Delgado") filed a Response and a Cross Motion for Partial Summary Judgment on September 28, 1990. Counsel argued the motions on December 3, 1990. The central issue in the motions is whether Southern Pacific owed Delgado a duty to prevent Delgado from boarding its trains in or near Southern Pacific's Yuma railroad yard. Delgado's Cross–Motion for Summary Judgment raises the issue of whether Southern Pacific's failure to prevent Delgado from boarding its train constituted negligence per se.

## FACTS

The following relevant, material facts are not in dispute:

1. On November 29, 1987, Delgado, an undocumented alien, boarded a stopped freight train at approximately 9:00 p.m. after hiding and waiting approximately one hour. Delgado boarded the train in or near Southern Pacific's Yuma railroad yard, but does not know exactly where he boarded the train.

2. Delgado remained on the train for approximately fifteen minutes. The train travelled at approximately 25 miles per hour.

3. Delgado lost his grip and fell from the train while it was near a Union 76 plant, and was injured. Delgado lost one foot and part of his other foot as a result of the fall.

4. Delgado had no ticket to board the freight train.

5. Delgado cannot identify the place where he boarded the train or the car he boarded.

6. Delgado concealed himself to avoid being discovered while waiting for and boarding the train. No one witnessed Delgado boarding the train.

7. Delgado alleges that Southern Pacific removed approximately 103,000 people from its premises in 1984, and that 47,482 of those people were removed from Southern Pacific's premises in Arizona and New Mexico. Delgado also alleges that Southern Pacific removed 8,073 people from the Yuma yard in 1984. Southern Pacific does not admit to the truth or reliability of Delgado's alleged figures. The actual numbers are immaterial to the disposition of this matter. The pertinent fact is that Southern Pacific removes significant numbers of trespassers from its premises nationwide and in Arizona.

8. People often board and "hitch a ride" on Southern Pacific's trains in and near the Yuma yard.

9. The Yuma yard is approximately five miles long. The Yuma yard encompasses all of Southern Pacific's land in the area.

10. Southern Pacific trains slow and stop at sidings throughout its line from Juarez, Mexico to Niland, California to allow other trains to pass. Trespassers generally board trains while they are stopped or moving slowly.

11. Undocumented aliens board Southern Pacific's trains at numerous sidings, including those in and near the Yuma yard. Southern Pacific arrests trespassers all along its main line. Delgado alleges that Southern Pacific agents arrested approximately 5,400 undocumented aliens along its main line in 1987. As noted *supra,* Southern Pacific disputes this allegation, and the Court views the actual number as immaterial.

## DISCUSSION

The parties do not dispute that Delgado was a trespasser on Southern Pacific's train. The only issue involved is whether Southern Pacific owed Delgado a duty to prevent him from boarding Southern Pacific's train. This issue is controlled by Arizona law. *See Torres v. Southern Pacific Transp. Co.,* 584 F.2d 900 (9th Cir.1978).

### A. A Railroad's Duty Toward Trespassers

With regard to a person's duties toward trespassers, Arizona follows the general rule set forth in RESTATEMENT (SECOND) OF TORTS § 333, which provides:

> Except as stated in §§ 334–339, a possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care
>
> (a) to put the land in a condition reasonably safe for their reception, or
>
> (b) to carry on his activities so as not to endanger them.

The special note to section 333 states, in pertinent part: "these rules in effect recognize the possessor as privileged to ignore the actual probability that others will trespass upon his land, and that their safety will depend upon ... the manner in which the possessor carries on his activities."

If Southern Pacific owed any duty to Delgado, that duty would come from one of

the exceptions contained in sections 334–337.

### 1. Liability Under RESTATEMENT (SECOND) OF TORTS § 334

Section 334 provides:

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety.

Comment d to section 334 states:

In order that the possessor of land may be subject to liability under the rule stated in this Section, it is necessary that he know, or from facts within his knowledge should know, that persons constantly and persistently intrude upon some particular place within the land. It is not enough that he know or have reason to know that persons persistently roam at large over his land.

In *Barry v. Southern Pacific Company,* 64 Ariz. 116, 166 P.2d 825 (1946), the plaintiff was injured when a tank car being pushed down a railroad track by an engine passed over him. The plaintiff was lying on the track, apparently asleep. The plaintiff asserted that members of the public often crossed over the railroad's tracks at that particular place, and that section 334 applied in that case. The Arizona Supreme Court held otherwise. The court noted that although members of the public may have walked the tracks, none slept on the tracks. The court stated:

The appellant, in his use of the roadbed, was nothing more than a trespasser lying on the private right of way of the railroad company, and no use for walking, however, open, notorious and constant by the general public of any path crossing the railroad at that point or any other would entitle appellant to a favored position as a "licensee" slumberer member of such general public. The railroad and its employees owed no duty to appellant except to avoid wantonly, recklessly or wilfully injuring him after actually discovering his presence on the tracks. *Id.* at 122–23, 166 P.2d at 829. In rejecting the plaintiff's argument that the railroad should have discovered his presence, the court summarized its opinion by stating: "[W]e conclude that there was no duty on the part of defendants to anticipate the presence of plaintiff in the position in which he was, and there being no duty to discover such presence plaintiff cannot be heard to say that defendants should have discovered his presence." *Id.* at 124, 166 P.2d at 830. In essence, the court held that the plaintiff was not a person the railroad needed to anticipate because he was lying on the tracks rather than crossing them in the usual manner. Thus, the court viewed the "limited area" exception narrowly.

In *Southern Pacific Co. v. Bolen,* 76 Ariz. 317, 264 P.2d 401 (1953), the Arizona Supreme Court restated a railroad's duty to anticipate pedestrians in a particular place: "We believe the sound rule to be that ... the defendant is required to use that degree of care which is commensurate with the probability of persons making use of the crossing at the time and place involved." *Id.* at 327, 264 P.2d at 408. In that case, however, the issues were framed in a manner that implied that ordinary and constant crossers at a location were licensees of the railroad. *See Id.* at 326, 264 P.2d at 407. The reason for the construction of the issue was the fact that the crossing was a public thoroughfare, and the railroad impliedly had approved of persons crossing the tracks. Thus, section 334 had no application in that case, and consequently was not discussed in it.

Likewise, in *Torres v. Southern Pacific Transportation Co.,* 584 F.2d 900 (9th Cir. 1978), the Court of Appeals for the Ninth Circuit rejected the "limited area" exception embodied in section 334 in a railroad trespasser case. In *Torres,* the court noted that section 334 applied to railroads in "the so called 'pathway cases.' " *Id.* at 903 (citing *Barry* and *Bolen* ). The court stated that the record contained no evidence that any member of the train crew had knowledge of constant trespassers in a limited

area, or that anyone had illegally boarded the particular car before or boarded another car at or near the precise location. *Id.* The court recognized the trial court's finding that the railroad crew must have known that people commonly "hitched" rides on the defendant's trains. However, the court emphasized comment d's language precluding liability based on mere knowledge of trespassers roaming at large on the possessor's land, and held that the railroad's knowledge of trespassers in general did not confer any duty to specific trespassers of whom the railroad had no knowledge. *Id.* (quoting with emphasis comment d to § 334).

2. Liability Under RESTATEMENT (SECOND) OF TORTS § 335

Section 335 provides:

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

By its own terms, section 335 has no application in this case. Section 335 addresses itself to artificial conditions on the land. A moving train is not an artificial condition on the land; it is an activity carried on by the possessor of the land. *See Torres v. Southern Pacific Transp. Co.,* 584 F.2d 900, 903 (9th Cir.1978) (applying sections 334 and 336, but not 335 and 337 in a railroad injury case). An artificial condition on the land would be an object such as a fence, or modification made to the land such as a trench. *See Webster v. Culbert-*

*son,* 158 Ariz. 159, 163, 761 P.2d 1063, 1067 (1988). In addition, Delgado did not contend in his Response to Southern Pacific's Motion for Summary Judgment that Southern Pacific's operation of its trains constitutes an artificial condition.

3. Liability Under RESTATEMENT (SECOND) OF TORTS § 336

Section 336 provides:

A possessor of land who knows or has reason to know of the presence of another who is trespassing on the land is subject to liability for physical harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety.

The wording of section 336 implies that it does not apply to knowledge of trespassers in general. First, the section addresses knowledge of "another who is trespassing on the land," thus implying knowledge of a particular person who is on the land. Second, the section requires a possessor to "carry on his activities upon the land with reasonable care for the trespasser's safety," thus implying that a single, specific trespasser is on the land and that the possessor must direct his activities with the particular trespasser's safety in mind.

For example, in *Torres v. Southern Pacific Transportation Co.,* 584 F.2d 900 (9th Cir.1978), the plaintiff "hopped" the defendant's train about ten miles from Yuma, Arizona. The plaintiff hid in an open gondola atop a pile of steel ingots. The train derailed and the plaintiff was injured. The plaintiff contended that the railroad would have discovered him had it maintained a "vigilant lookout," and would have prevented his injuries by evicting him from the train. The Ninth Circuit held that the railroad owed the plaintiff no duty to maintain a vigilant lookout for trespassers. The Ninth Circuit noted the trial court's finding that the train crew knew that people frequently boarded the defendant's trains, but noted that record did not reflect that the crew of the train had any further facts within its knowledge to indicate the plaintiff was present on the train. *Id.* at 903–

04. The court held that section 336 did not apply. *Id.*

#### 4. Liability Under Restatement (Second) of Torts § 337

Section 337 provides:

A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if

(a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and

(b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved.

In 1988, the Arizona Supreme Court adopted section 337 and quoted with approval section 12(1), which states:

The words "reason to know" are used throughout the restatement of this subject to denote the fact that the actor has information from which a person of reasonable intelligence or if the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

*Webster v. Culbertson*, 158 Ariz. 159, 163, 761 P.2d 1063, 1067 (1988). The plaintiff in Webster was injured when he rode a horse into a barbed-wire fence. The fence was not plainly visible, and the owner of the land posted no warnings of its existence. The owner asserted that he had no reason to know of the plaintiff's proximity to the fence, and therefore should not be held liable. The Arizona Supreme Court disagreed with the owner's argument that he had no reason to know of the plaintiff's presence. The court found enough evidence in the record to support an inference that the defendant should have known of the presence of trespassers near the fence, and held that the question should go to the jury. *Id.*

■ Section 337, like section 335, does not apply in this case because it relates to artificial conditions on the land. However, the holding in *Webster* is relevant to this case because the Arizona Supreme Court's interpretation of section 337's "reason to know of their dangerous proximity to the condition" clause may be relevant to this Court's interpretation of section 336's "reason to know of another who is trespassing on the land" clause.

In *Webster,* the defendant bought a piece of property and erected a barbed wire fence across to keep out trespassers who were crossing her property. The barbed wire fence crossed over a wash that the defendant knew was used for recreational purposes. Evidence in the record indicated that footprints, hoofprints and tire tracks were plainly visible in the wash. An equestrian trail crossed the wash less than fourteen yards from where the wash entered the defendant's property. The court in *Webster* held that the tracks and other evidence supported an inference that the defendant had reason to know that people were entering and crossing the wash in dangerous proximity to the barbed wire fence. *Webster,* 158 Ariz. at 162–63, 761 P.2d at 1066–67. In essence, the court placed a duty to warn on a person who maintains a dangerous artificial condition when the person is aware of a chance that others will come into dangerous proximity of the condition. *See id.* The court rejected comment (a) to section 337, which states: "The rule stated in this Section relates only to the conditions under which a possessor of land is subject to liability to a trespasser whom he knows to be about to come in contact with a highly dangerous artificial condition maintained by him upon the land." The court instead decided to rely solely on the "reason to know" language contained in section 12(1). In addition, although section 335's "limited area" clause might have made that section more applicable in *Webster,* the court did not consider it because the plaintiff failed to raise section 335 on appeal. *Id.* at 163, 761 P.2d at 1067.

#### 5. Conclusion

■ First, the evidence before the Court does not allow a direct adaptation of the

"limited area" exception embodied in section 334 or an inference that it applies in this case. The Yuma yard is approximately five miles long. In the oral argument on these motions, counsel for Delgado contended that trains stop only in certain locations within the Yuma yard. Delgado offered no evidence in support of this assertion. Delgado was given an extension in the briefing of these motions. That extension, along with the delay resulting in the transfer of this case from the Tucson division, gave Delgado nearly three months to gather more evidence in support of his position.

> The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Delgado failed to supply the necessary evidence to support his allegations.

Moreover, the alleged fact that trains stop in particular areas of the Yuma yard is not material to Southern Pacific's knowledge that people constantly intrude on particular areas of the Yuma yard. Delgado's allegation buttresses Southern Pacific's argument that people do not intrude on a limited area of the Yuma yard. If trains stop at various locations throughout the Yuma yard, intrusions upon all of those areas indicate that trespassers roam at large over the Yuma yard. In addition, the fact that trains take a long time to stop and start is well known. Delgado does not allege that people illegally board only stopped trains. Rather, Delgado alleges that the train he boarded was stopped. In short, Delgado's case fails because he has offered no evidence to show that people constantly intrude on the particular area

where he waited in the Yuma yard without Southern Pacific's permission.

Second, *Webster* is distinguishable from the case at bar. In *Webster,* the court was faced with evidence that persons often crossed a wash near a barbed wire fence. The evidence indicated that the plaintiff knew people were crossing the wash near the fence, but did not adequately warn of the existence of the fence. Under the court's analysis of section 337, such inferences could warrant imposition of liability on the plaintiff for failing to warn of the fence. In this case, however, the Court is faced with a defendant's activity, not an artificial condition. Under section 336, Southern Pacific must carry on its activity with reasonable regard for the safety of persons it has reason to know are trespassing on its land. Were this Court to accept Delgado's argument, Southern Pacific would have to cease its activities altogether.

Although not admitted by Southern Pacific, the Court assumes Delgado's allegation that Southern Pacific apprehends numerous persons who illegally board its trains each year to be true for the purposes of this motion. Under Delgado's interpretation of the Arizona Supreme Court's holding in *Webster,* Southern Pacific has "reason to know" of every trespasser on its rails because it has apprehended so many trespassers.

■ Further, unlike the defendant in *Webster* or any other person who maintains an artificial condition, Southern Pacific reasonably must be able to change its activities to protect the safety of trespassers rather than merely warning them. The person who maintains an artificial condition must warn of the condition if that person has reason to know others will come near it. In the *Webster* case, a simple sign or other visible warning device near the fence might have been sufficient. Such a device would not be sufficient in the case of a railroad trying to conduct its activities. Further, awareness of the activity or its danger is not part of the analysis under section 336. *Compare* § 336 *with* § 337. Delgado's argument leads to the proposi-

tion that Southern Pacific must alter its activities to protect the safety of all who attempt to board its trains illegally, because Southern Pacific knows in all probability that people will attempt to board its trains. The only way to completely avoid illegal boarding of Southern Pacific's trains would be for Southern Pacific to cease operating its trains or to take other measures that would render its business economically infeasible.[1] It would be entirely unreasonable to require a railroad to stop operating because it cannot prevent people from "hopping" its trains. Therefore, Delgado's construction of *Webster* cannot control this Court's interpretation of section 336.

■ A more logical reading of section 336 requires a possessor of land to act to protect a trespasser's safety once the possessor knows or reasonably should discover the trespasser's presence. This is precisely the holding the Court of Appeals for the Ninth Circuit adopted in *Torres v. Southern Pacific Transportation Co.*, 584 F.2d 900 (9th Cir.1978), discussed *supra.*

■ The facts in *Torres* are very similar to those in this case. However, the plaintiff's case in *Torres* was much stronger than Delgado's case. First, the plaintiff in *Torres* was waving to people from the railroad car, and in this case Delgado admittedly concealed himself. Thus, as in *Torres*, nothing in the evidence in this case establishes or even suggests that Southern Pacific's agents had any specific reason to suspect Delgado's presence in the Yuma yard or aboard the train, and section 336 cannot apply.

Second, the plaintiff in *Torres* contended that the railroad's negligence caused a train wreck in which he was injured. The only negligence Delgado asserts in this case is Southern Pacific's alleged negligence in failing to prevent him from boarding its train. Delgado does not allege that Southern Pacific operated its train negligently, and no wreck occurred in this case. Delgado merely fell off the train. In dealing with the plaintiff's allegations of negli-

gence in *Torres*, the Ninth Circuit noted that

> typical illustrations of the applicability of [section 336] seems (sic) to involve affirmative action, which if negligently carried on may cause serious injury as an immediate and direct consequence, such as starting or stopping trains, giving or failing to give a signal by bell or whistle. This is far different from passive negligence, such as a failure to keep a constant, vigilant lookout, or a failure to carry out a routine inspection at a time when no peril is foreseeable.

*Torres*, 584 F.2d at 904. Again, Southern Pacific's only allegedly negligent conduct was failing to prevent Delgado from boarding the train. The railroad's alleged negligence falls squarely within the passive negligence the Ninth Circuit described as insufficient.

■ Because none of the exceptions to Restatement section 333 apply in this case, Southern Pacific owed Delgado the mere duty not to wilfully or wantonly injure him. *See Barry*, 64 Ariz. at 123, 166 P.2d at 828. Delgado does not allege that Southern Pacific wilfully or wantonly injured him. In addition, even assuming Southern Pacific owed Delgado a duty to reasonably conduct its activities with reasonable care for his safety, Delgado has not demonstrated, or even alleged, that Southern Pacific operated its train negligently. Therefore, summary judgment in favor of Southern Pacific is proper unless Arizona statutes have imposed a duty on Southern Pacific that does not exist under common law.

### B. Negligence Per Se Based on Violations of Arizona Regulations

Delgado asserts that Southern Pacific's failure to prevent him from boarding its train constitutes negligence per se. Delgado asserts that Southern Pacific violated Arizona Administrative Rule and Regulation R 14–5–103 by failing to prevent him from boarding its train. Arizona Revised

---

**1.** One might point to this nation's difficulties in policing its borders as an example of the impos-

sibility of preventing trespassing.

Statutes section 40–423 provides that a public service corporation that violates the laws or regulations pertaining to it be liable to persons for their damages incurred as a result of the violation. A.R.S. § 40–423 (West 1985).

Southern Pacific contends that section 40–423 did not add to its duties under Arizona common law, and that even assuming section 40–423 created a new duty for it, Delgado is not a member of the class protected by the statute and therefore cannot collect under a negligence per se theory.

In *Cole v. Arizona Edison, Inc.*, 53 Ariz. 141, 86 P.2d 946 (1939), the Arizona Supreme Court held that the predecessor statute to section 40–423, Revised Code section 725 (1928), was "merely declarative and in affirmance of the common law upon the subject and did not enlarge it, and conferred no rights upon citizens which they did not already have by reason of the common law." *Id.* at 149–50, 86 P.2d at 950. Delgado contends that *Cole* is no longer good authority because it was decided in 1939 and because *Veach v. City of Phoenix*, 102 Ariz. 195, 427 P.2d 335 (1967) impliedly overruled *Cole*. This Court must follow Arizona law in this case. *See Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■■■■ Nothing in *Veach* suggests that the court intended to overrule *Cole* on the issue of whether section 40–423 creates duties in excess of the common law. *Veach* eroded *Cole*, but did so based on common law, not on statutory or regulatory grounds. *See Veach*, 102 Ariz. at 196–97, 427 P.2d at 336–37. Delgado also cites *Southern Pacific Transportation Co. v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975) in support of his proposition that the rule in *Cole* is not current law. Plaintiff contends that the court's failure to cite *Cole* means *Cole* was no longer regarded as applicable. In *Lueck*, the issue was whether the plaintiff's contributory negligence was superseded by the railroad's wanton negligence, not whether the Arizona regulations created duties that did not exist at common law. The Arizona Supreme Court noted that the evidence was sufficient to support the jury's finding that the railroad intentionally violated speed regulations as well as other common law duties. *Id.* at 562, 535 P.2d at 601. The case did not involve the creation of new duties under the regulations. Thus, the court had no reason to cite *Cole*. The holding in *Cole* that the predecessor statute to section 40–423 does not create any duty that did not exist under the common law remains current, and this Court is bound to follow it. *See Golden State Transit Co. v. City of Los Angeles*, 726 F.2d 1430, 1433 (9th Cir. 1984). Thus, the railroad did not owe Delgado a duty under section 40–423 to prevent him from boarding and was not negligent per se.

■■■■ Moreover, a fundamental requirement in applying the doctrine of negligence per se is that the party asserting negligence per se be a member of the class intended to be protected by the statute or regulation. *Hidalgo v. Cochise County*, 13 Ariz.App. 27, 474 P.2d 34, 35 (1970) (citing RESTATEMENT (SECOND) OF TORTS § 286). In this case, Delgado was a trespasser. The Arizona regulation involved clearly was intended to protect passengers and others on trains from the threat of harm posed by trespassers. Nothing in the regulation allows a reasonable inference that the regulation was intended to burden railroads with liability to trespassers for harm arising only from the trespassers' wrongdoing. By the very nature of the term, a trespasser is someone who has succeeded in gaining access to another's property without the other's permission. Construction of the regulation as Plaintiff asserts would lead to the absurd result of predicating defendants' liability on plaintiffs' ability to succeed in improper conduct. Simple common sense mandates a contrary result. Long ago, the Court of Appeals for the Eighth Circuit stated this precept quite plainly: "The law will do nothing to stimulate and encourage fraud and dishonesty, and that would be the effect of holding that a railroad company owed to one riding on its train [as a trespasser] the duties and obligations it owes to a passenger who has honestly paid his fare." *Condran v. Chi-*

**1518**

*cago, Minnesota & St. Paul Ry. Co.*, 67 F. 522 (8th Cir.1895). Southern Pacific was not negligent per se due to its failure to prevent Delgado from boarding its train. Therefore, summary judgment in favor of Delgado on a negligence per se theory would be improper. Further, because Arizona statutes do not impose additional duties to Southern Pacific that do not exist under common law, summary judgment in favor of Southern Pacific is proper.

CONCLUSION

Based on the foregoing, IT IS ORDERED granting Defendant Southern Pacific Transportation Company's Motion for Summary Judgment and denying Plaintiff Alfredo Jaime Delgado's Cross Motion for Summary Judgment. The Clerk shall enter judgment accordingly.