NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SARAH DEL SERONDE, et al., *Plaintiffs/Appellants*,

*v.*

BNSF RAILWAY COMPANY, et al., *Defendants/Appellees*.

No. 1 CA-CV 16-0385
FILED 10-26-2017

Appeal from the Superior Court in Maricopa County
Nos. CV2011-010945
CV2011-010947
(Consolidated)
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Pottroff Law Office, Manhattan, KS
By Robert Pottroff
*Co-Counsel for Plaintiffs/Appellants*

Schneider & Onofry PC, Phoenix
By Luane Rose
*Co-Counsel for Plaintiffs/Appellants*

Thorpe Shwer PC, Phoenix
By William L. Thorpe, Bradley Shwer, Adam T. Reich
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Margaret H. Downie joined.

---

**C A M P B E L L**, Judge:

¶1          The driver and members of the deceased passenger's family (collectively, "the Serondes") sued BNSF Railway Company ("BNSF"), alleging its negligence caused a car-train collision resulting in their damages. The superior court granted summary judgment for BNSF, ruling as a matter of law it did not breach the standard of care it owed to the vehicle occupants. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2          Tsinijinni Jean Seronde ("Jean") was driving on I-40 with his mother, Ella Seronde. Attempting to bypass a traffic jam on the interstate, Jean pulled off and traveled approximately 10 miles south, eventually leaving the paved road and continuing down a gravel road. Jean was following several other vehicles also attempting to bypass the interstate gridlock. After driving over a cattle guard, Jean encountered a railroad crossing marked with a STOP sign and crossbuck sign ("the Crossing"). He stopped and looked in both directions before proceeding through the Crossing.

¶3          Immediately after traversing the railroad tracks, Jean turned left following the vehicle in front of him and proceeded along a railroad right-of-way running parallel to the tracks. The group reached an impassable wash approximately one mile east of the Crossing and the vehicles turned around and drove back the way they had come.

¶4          As Jean led the line of cars back toward the Crossing, a BNSF train approached from behind. The train crew saw the cars approximately one mile before the Crossing and began sounding the train's horn. Jean testified that he did not hear the horn and could only see the dust trail emanating from the other vehicles in his rear-view mirror. When Jean approached the Crossing, he slowed his vehicle, but failed to stop and ensure the tracks were clear before entering. As Jean drove onto the tracks,

2

the train collided with his car. Jean suffered injuries and his mother Ella was killed in the collision.

¶5 The superior court granted summary judgment for BNSF, ruling federal law preempted the Serondes' allegations that the train failed to slow as it approached the Crossing.[1] This court affirmed that ruling, but reversed the dismissal of the Serondes' negligence claim insofar as it alleged BNSF had provided inadequate markings and warning devices at the Crossing because the superior court had not addressed that claim. *See Seronde v. BNSF Ry. Co.*, 1 CA-CV 14-0166, 2015 WL 1516534, at *4, ¶ 16 (Ariz. App. April 2, 2015) (mem. decision).

¶6 On remand, BNSF again moved for summary judgment, asserting that because Jean and Ella were trespassers at the time of the collision, its only duty was to avoid willfully and wantonly injuring them and it had satisfied that duty. The Serondes maintained Jean and Ella were not trespassers, but either licensees or invitees to whom BNSF owed a duty of reasonable care. The superior court granted summary judgment for BNSF, ruling as a matter of law that Jean and Ella were trespassers and BNSF had not breached the duty of care it owed them. The Serondes timely appealed.

¶7 The Serondes argue the superior court erred in ruling BNSF did not owe a duty of reasonable care to Jean and Ella. They contend, at minimum, that a material question of fact exists regarding the duty BNSF owed to Jean and Ella.

## DISCUSSION

¶8 This court reviews entry of summary judgment de novo, viewing the facts in the light most favorable to the party against whom the court entered judgment. *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 71, ¶ 11 (App. 2011). "We will affirm summary judgment only if there is no genuine issue as to any material fact and the party seeking judgment is entitled to judgment as a matter of law." *Id.*

¶9 To establish BNSF's negligence, the Serondes were required to prove (1) the existence of a duty recognized by law requiring BNSF to conform to a certain standard of care, (2) BNSF's breach of that standard, (3) a causal connection between BNSF's conduct and the Serondes' injury, and (4) actual damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007).

---

[1] Ella's children brought a wrongful-death claim against BNSF. Jean sued separately for personal injuries and the cases were consolidated.

Because the superior court ruled, as a matter of law, on the elements of duty and breach, we confine our analysis to those issues.

## I.    Duty

**¶10**        Whether a defendant owes a duty of care to the plaintiff is a legal question the court decides based on the parties' relationship or other statutory and public policy considerations. *Id.* at 145-46, ¶¶ 19-25. Under Arizona common law, a landowner's duty to persons coming onto his or her premises is based on the status of the visitor. In the case of a trespasser, a person "who enters or remains upon land in the possession of another without a privilege to do so," *see* Restatement (Second) of Torts ("Restatement") § 329 (1965), the landowner's duty is only to refrain from willfully or wantonly disregarding the person's safety. *Webster v. Culbertson*, 158 Ariz. 159, 161 (1988) (citation omitted). In contrast, in the case of an invitee—a person who enters the land because the landowner held the premises out as open to the public, *see* Restatement § 332—the landowner has an affirmative duty to use reasonable care to make the premises safe for the invitee's use. *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 355 (1985).[2]

**¶11**        The superior court ruled that Jean and Ella were trespassers as a matter of law. It also ruled that BNSF, as the landowner, owed them a duty to avoid willfully or wantonly injuring them and, as a matter of law, did not breach its duty. *See Beesley v. Union Pac. R.R. Co.*, 430 F. Supp. 2d 968, 970 (D. Ariz. 2006) ("a landowner owes no duty toward a trespasser except not to willfully or wantonly injure him after discovering his peril"). Although the Serondes admitted BNSF owns the land on which the collision occurred, they argue that an exception to the trespasser rule applies because BNSF either (1) knew that trespassers regularly used the Crossing and acquiesced to that behavior, or (2) invited and induced Jean and Ella to use the Crossing. As a result, they argue Jean and Ella were no

---

[2] A third category, a licensee, is "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." *Hicks v. Superstition Mtn. Post No. 9399, Veterans of Foreign Wars of the U.S.*, 123 Ariz. 518, 521 (1979) (quoting Restatement § 330). The duty a landowner owes to a licensee is to refrain from willfully or wantonly causing harm or knowingly permitting the person to contact a hidden peril. *Mull v. Roosevelt Irr. Dist.*, 77 Ariz. 344, 347 (1954). The Serondes do not assert on appeal that Jean and Ella were licensees.

longer trespassers but invitees to whom BNSF owed a duty of reasonable care.

### A. Knowledge of Trespassers and Acquiescence

**¶12**        Arizona follows Restatement § 334, which states that when a landowner knows or should know that trespassers "constantly intrude upon a limited area" of the landowner's property, he or she owes a duty to exercise reasonable care for the trespasser's safety. *Id.*; *Delgado v. S. Pac. Transp. Co.*, 763 F. Supp. 1509, 1512 (D. Ariz. 1991). The Serondes contend BNSF had knowledge that trespassers constantly traversed the Crossing and therefore had a duty to use reasonable care when conducting its activities on the land. The evidence, however, does not establish that BNSF knew that trespassers "constantly intrud[ed]" on the Crossing.

**¶13**        BNSF constructed the Crossing in 1983 to permit restricted access to the National Park Service for access to a road located immediately south of the Crossing that lies within the Petrified National Forest. This private access road is gated and not open to the public. BNSF also permits a neighboring landowner to use the Crossing to access her private, gated driveway south of the Crossing.[3]

**¶14**        Despite this evidence that the remote Crossing served only as access to the private roads located to the south, the Serondes contend there is evidence that the public regularly used the Crossing with BNSF's knowledge and acquiescence. First, they cite a United States Department of Transportation Inventory Information form in which BNSF estimated

---

[3] The United States Department of Transportation identifies the Crossing as private, which is consistent with BNSF's internal classification of the Crossing and applicable law. *See* Arizona Administrative Code R14-5-101(14) & (15) (defining a private grade crossing as "any crossing where a legal agreement exists between a private property owner and a railroad company for the exclusive use of the landowner and the landowner's invitee" and a public grade crossing as "any crossing used by the general public, for which a legal agreement between a private property owner and a railroad company does not exist"); 49 C.F.R. § 222.9 (defining a public highway-rail grade crossing as a "location where a public highway, road, or street, including associated sidewalks or pathways, crosses one or more railroad tracks at grade. If a public authority maintains the roadway on both sides of the crossing, the crossing is considered a public crossing."). The Serondes asserted in the superior court that the Crossing was a public crossing, but do not raise that argument on appeal.

that 55 vehicles per day used the Crossing. However, because the inventory form does separate the vehicles into groups of trespassers as opposed to licensees or invitees, it is not probative of whether the public constantly intruded on the Crossing. *See* Ariz. R. Evid. 401(a) (defining relevant evidence, in part, as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence"). Moreover, because BNSF identified the Crossing as private on its inventory form, this case is distinguishable from the one on which the Serondes rely, *Ross v. Burlington Northern and Santa Fe Ry. Co.*, 63 F. Supp. 3d 1330 (W. D. Okla. 2014). In that case, the plaintiff offered evidence that the defendant railroad considered the crossing to be public and knew that the public used it, supporting an inference that the railroad had included public use in the "vehicles per day" estimate contained on its Department of Transportation inventory form. *Id.*

¶15        The Serondes next argue that BNSF's engineer, Guy Nunley, agreed it was "not unusual" to see motorists in non-BNSF vehicles using the Crossing. A review of Nunley's testimony, however, shows he testified that most of the vehicles he saw near the Crossing belonged to BNSF and he could not say whether the non-BNSF vehicles were authorized to be on the right-of-way or were, in fact, trespassers. Nunley's testimony therefore does not raise a material question of fact regarding whether the public "constantly and persistently" intruded on the Crossing. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990) (noting evidence that may provide a "scintilla" or create the "slightest doubt" is not sufficient to withstand a motion for summary judgment); *Shaw v. Petersen*, 169 Ariz. 559, 560-61 (App. 1991) (a motion for summary judgment should not be denied simply upon speculation that some doubt, scintilla of evidence, or dispute over irrelevant or immaterial facts "might blossom into a real controversy in the midst of trial" (quoting *Orme Sch.*, 166 Ariz. at 311)).[4]

---

[4] This case is therefore distinguishable from *S. Pac. Co. v. Bolen*, in which the Arizona Supreme Court reversed a verdict for the plaintiff because the trial court improperly instructed the jury on the railroad's duty of care. 76 Ariz. 317, 327-28 (1953). In that case, there was evidence from which a jury could find that the public constantly intruded on a pathway across the tracks and the railroad should therefore have reasonably anticipated the presence of people on the tracks. *Id*. at 321, 326. The court held that the railroad's knowledge of the likelihood of the presence of trespassers was one of the circumstances that informed the degree of care (i.e., the duty) the railroad owed to the plaintiffs. *Id*. at 327-28.

**¶16** Finally, we reject the Serondes' argument that BNSF approved of the public's use of the Crossing because it did not post signage stating "no trespassing" or otherwise restricting access to authorized persons. Absent evidence that the public persistently used the Crossing, BNSF's failure to post "keep out" signs could not constitute acquiescence to trespass. *See* Restatement § 334 (imposing a heightened duty of care only on a landowner who knows or should know that trespassers constantly intrude upon his land); *Delgado*, 763 F. Supp. at 1513 (knowledge of trespassers in general does not confer a duty to specific trespassers in other areas of whom a railroad has no knowledge).

### B.      Invitation

**¶17** The Serondes allege BNSF's construction of the Crossing and installation of warning signs was an invitation or inducement to the public to use the Crossing.

**¶18** They rely on cases, however, in which the railroad had constructed or maintained a crossing for the benefit of either the plaintiff or the public in general. *See St. Louis-San Francisco Ry. Co. v. Ready*, 15 F.2d 370 (5th Cir. 1926) (decedent "was not a trespasser or licensee, but an invitee" because railroad established a crossing and treated it as a public crossing); *Missouri Pac. Ry. Co. v. Bridges*, 74 Tex. 520, 522 (1889) (holding that when a railroad voluntarily maintains a crossing, "knowing that it is a road in common use by the public, it in effect invites the use of it and proclaims it safe"); *Cent. R.R. & Banking Co. v. Robertson*, 95 Ga. 430 (1895) (railroad established the crossing "to accommodate the settlement," thereby inviting the public to use it); *Creten v. Chicago, Rock Island and Pac. R.R. Co.*, 184 Kan. 387, 389 (1959) (the railroad's private crossing had been used for thirty years by the public generally and by the plaintiff to gain access to a field he rented on the south side of the tracks). Here, the evidence established that BNSF constructed the Crossing for the benefit of the National Park Service and permitted use by a neighboring landowner only. The Serondes did not offer any evidence that BNSF constructed the Crossing for the benefit of the motoring public or that it was regularly used by the public.

**¶19** Next, the Serondes argue the signage at the Crossing invited the public to trespass because BNSF placed the STOP sign and crossbuck sign in the same "sign configuration" it used at public crossings.[5] However,

---

[5] The Serondes also discuss a private sign located at the entrance to a gas facility approximately one mile from the Crossing that directs "all

the Serondes did not offer any evidence to support that claim.[6] Even assuming, however, that BNSF installed the same warning signage at both public and private crossings, that fact alone would not constitute an invitation for trespassers to use a private crossing. *Orme Sch.*, 166 Ariz. at 309; *Shaw*, 169 Ariz. at 560-61. Necessarily, the public would have to see the signs before they were invited or induced to use the Crossing. Unless Jean and Ella trespassed on BNSF property, they never would have seen the railroad crossing signs. Significantly, the Serondes did not offer any evidence that Jean and Ella relied on the STOP and crossbuck signs as an inducement to use the Crossing.

**¶20** Nevertheless, citing *Arizona Copper Co. v. Garcia*, 25 Ariz. 158 (1923), the Serondes contend that when a railroad recognizes a crossing by installing warning signs, it must use reasonable care to avoid injury to those using the crossing. In *Garcia*, the plaintiff was injured at a railroad crossing that intersected a highway. *Id*. at 159. Although the crossing was established without the proper statutory permission, the evidence showed that it had been a "thoroughfare between populous communities and frequented by travelers" for several years before the collision. *Id*. The railroad, recognizing the public use of the crossing, had installed several warning signs to alert drivers on the highway to the crossing. *Id*. The Arizona Supreme Court rejected the railroad's argument that it owed only the limited trespasser duty to the plaintiff because the crossing was unlawfully established. *Id*. at 159-60. The court ruled that in light of the railroad's knowledge of the "long-continued current of travel" over the crossing, its placement of the warning signs was a recognition of the crossing and "an invitation to cross upon such conditions as apply generally to a public crossing." *Id*. at 160. The court did not hold, as the Serondes suggest, that Arizona law presumes that a railroad invites the public to trespass and must act with reasonable care every time it places warning signs at a crossing.

---

through traffic and railroad access" toward the Crossing and an Apache County sign identifying a "nearby" road and posting a speed limit. Because there is no evidence that BNSF posted either of these signs, they could not constitute an invitation from BNSF to the public to trespass at the Crossing.

[6] Although the Serondes cited the report of their expert, William Hughes, that the signage at the Crossing was the same type of signage BNSF used at its public highway-grade crossings the superior court struck Mr. Hughes' report. Accordingly, there was no material dispute of fact on this issue.

¶21        Similarly, the other cases the Serondes cite each involved continuous and open use of the crossing by the public in addition to the railroad's posting of warning signs. *See Cleveland, C., C. & St. L. Ry. Co. v. Weil*, 68 F.2d 48, 49-50 (7th Cir. 1933) (holding that where crossing in a public road had been used by general public for fifty-eight years, the evidence—including railroad's installation of warning signs—supported jury finding that railroad had given it over to public use and extended invitation to cross); *Schoonover v. Baltimore & O.R. Co.*, 69 W. Va. 560 (1911) (reversing dismissal of negligence action because railroad had established the crossing to allow the public to access a park and, therefore, plaintiff was an invitee to whom it owed duty of reasonable care); *Lake Erie & W.R. Co. v. Fleming*, 183 Ind. 511 (1915) (railroad constructed a crossing for vehicles and pedestrians traveling between public street and poultry plant that was in "constant daily use by many people, and was the only way to reach the plant"); *McGunegill v. Chesapeake & O. Ry. Co.*, 199 F.2d 302, 302-03 (7th Cir. 1952) (railroad's maintenance of a crossing to provide ingress and egress for buildings and a public swimming pool, coupled with its erection of warning signs, impliedly invited the public to use the crossing); *Ross*, 63 F. Supp. 3d at 1334 (evidence showed railroad considered the crossing to be public and knew an average of thirty vehicles per day used it); *Chesapeake & Ohio Ry. Co. v. Pulliam*, 185 Va. 908, 912-13 (1947) (evidence showed crossing was used daily by the general public for at least forty years); *Belcher v. Norfold & W. Ry. Co.*, 140 W. Va. 848, 853 (1955) (evidence showed crossing had been used by the public for eight to thirty-five years) *overruled on other grounds by Bradley v. Appalachian Power Co. v. Elk Grocery Co.*, 163 W. Va. 332, 342 n.16 (1979).

¶22        In this case, there is no evidence that BNSF placed the signage at the Crossing in response to trespassers' constant and persistent use of the Crossing. To the contrary, as discussed, there is no evidence that the public regularly used the Crossing. Therefore, BNSF's installation of the STOP and crossbuck signs does not support an inference that it invited the public to use the Crossing.

### 1.        The Crossing's Appearance Was Not Misleading

¶23        Relying on Restatement § 367 and several out-of-state cases, the Serondes allege that Jean and Ella fell within another exception to the general rule regarding trespassers. They allege this exception changed their status from trespassers to invitees, requiring BNSF to act with reasonable care toward them.

¶24        Section 367 provides:

> A possessor of land who so maintains a part thereof that he *knows or should know that others will reasonably believe it to be a public highway* is subject to liability for physical harm caused to them, while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel.

(Emphasis added).

¶25        Arizona, however, does not follow the Restatement position that a landowner's duty changes to one of reasonable care if he "knows or should know that others will reasonably believe" they are travelling on public land. Rather, Arizona law requires a plaintiff to show that the defendant permitted open use by the public of the land in question. *Olsen v. Macy*, 86 Ariz. 72, 74. Interpreting § 367 in *Olsen*, the Arizona Supreme Court stated:

> We find the law to be that if an owner or occupant of property *has permitted persons generally to use or establish a way across it* under such circumstances as to induce a belief that it is public in character, he owes to persons availing themselves thereof the duty due to those who come upon the premises by invitation.

*Id.* at 74 (emphasis added).

¶26        While plaintiff urges us to adopt this standard, we must follow both Arizona statute and Arizona Supreme Court jurisprudence as more fully set forth above. Again, because the Serondes did not offer any evidence from which a reasonable jury could conclude that BNSF permitted the public to openly use the Crossing, the undisputed facts demonstrate that Jean and Ella were trespassers when they entered BNSF's property.

## II.    Breach

¶27        The superior court correctly ruled, as a matter of law, that BNSF owed the plaintiffs a duty to avoid willfully and wantonly causing them harm. *See Webster*, 158 Ariz. at 161 ("In the typical 'trespasser' case, plaintiff may not recover unless the landowner has been guilty of some willful or wanton disregard for the plaintiff's safety."); *Barnhizer v. Paradise Valley Unified Sch. Dist. No. 69*, 123 Ariz. 253, 254 (1979) ("Ordinarily, the duty of a landowner to a trespasser is to not willfully or wantonly injure

him."); Restatement § 333 (unless an exception applies, "possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care (a) to put the land in a condition reasonably safe for their reception, or (b) to carry on his activities so as not to endanger them"); *Delgado*, 763 F. Supp. at 1516 (concluding that because none of the exceptions to Restatement § 333 applied, railroad owed trespasser "the mere duty not to willfully or wantonly injure him").

¶28 The superior court also determined, as a matter of law, that BNSF had not breached that duty. Whether a defendant has exercised the care required to satisfy its duty is generally a question of fact for the jury, but a court may rule as a matter of law when "no reasonable juror could conclude that the standard of care was breached." *Gipson*, 214 Ariz. at 143, ¶ 9 n.1 ; *see also Markowitz*, 146 Ariz. at 357; *Coburn v. City of Tucson*, 143 Ariz. 50, 53-54 (1984). We agree with the superior court. The Serondes did not offer any evidence that would allow a reasonable jury to conclude BNSF willfully and wantonly caused Jean and Ella harm.[7]

¶29 Arizona courts group willful and wanton conduct with reckless conduct as an "aggravated form of negligence." *Williams v. Thude*, 188 Ariz. 257, 259 (1997) ("Gross negligence and wanton conduct have generally been treated as one and the same."). Wanton misconduct is negligence that "involves the creation of an unreasonable risk of bodily harm to another (simple negligence) together with a high degree of probability that substantial harm will result (wantonness)." *DeElena v. S. Pac. Co.*, 121 Ariz. 563, 566 (1979); *see also S. Pac. Transp. Co. v. Lueck*, 111 Ariz. 560, 562 (1975) ("Conduct is wanton if a defendant intentionally does or fails to do an act, knowing or having reason to know of facts which would lead a reasonable man to realize that his conduct not only created an unreasonable risk of harm to another but involved a high degree of probability that such harm would result.").

¶30 The evidence showed that the train crew began sounding the train's horn when they saw the cars on BNSF's right-of-way, and applied emergency braking procedures as soon as they observed Jean enter the

---

[7] The Serondes' argument on appeal that BNSF failed to adequately warn of, mark, or restrict access to the Crossing is premised on the notion that BNSF owed Jean and Ella a duty of reasonable care because they were invitees. We have rejected that premise and therefore do not consider whether the Serondes created a material question of fact regarding whether BNSF breached that higher standard of care.

Crossing.[8] There is no dispute that Jean was aware of the tracks and the danger they posed before he entered the Crossing at the time of the collision because he had stopped and looked in both directions when he first crossed the tracks only minutes earlier.

¶31      BNSF's duty to avoid willfully and wantonly injuring Jean and Ella did not require it to post "no trespassing" signs, fence the Crossing to keep trespassers away, or install lights and crossing gates to prevent trespassers from disregarding the STOP sign and inherent danger of the train tracks and entering the Crossing without stopping. *Barnhizer*, 123 Ariz. at 255 (1979) (noting a landowner's duty to a trespasser is to avoid willfully and wantonly injuring him, not "to prevent every possibility of harm"); *cf. Delgado*, 763 F. Supp. at 1515-16 (rejecting argument that railroad's alleged failure to prevent trespassers from boarding its trains was a failure to carry on its activities with reasonable regard for persons it had reason to know were trespassing). Arizona courts have long recognized that "[a] railroad track of itself is unquestionably a warning of danger, and it is the duty of every person who sees such a danger signal to look and listen before going on the track." *Canion v. S. Pac. Co.*, 52 Ariz. 245, 251 (1938).

¶32      Because no reasonable juror could find that BNSF breached the applicable standard of care, the superior court correctly granted summary judgment for BNSF. *Gipson*, 214 Ariz. at 143, ¶ 9 n.1; *DeElena*, 121 Ariz. at 569 (noting evidence of wantonness must "be more than slight and it may not border on conjecture" in order to create a material question of fact for the jury).

**CONCLUSION**

¶33      For the foregoing reasons, we affirm.  We will award costs to

---

[8] Because this court determined in the Serondes' earlier appeal that federal law preempted their negligence claim insofar as it was based on the train's failure to slow as it approached the Crossing, *Seronde v. BNSF Ry. Co.*, 1 CA-CV 14-0166, 2015 WL 1516534, at *4, ¶ 16 (Ariz. App. April 2, 2015) (mem. decision), their negligence claim is limited to alleged inadequate markings and warning devices.

BNSF upon its compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA